UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES BOLDISCHAR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 14 C 6844 |
| | ) |
| RELIASTAR LIFE INSURANCE CO., and | ) Judge Rebecca R. Pallmeyer |
| VOYA AMERICA EQUITIES, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Boldischar brought this suit against his former employer, Defendant ReliaStar Insurance Company ("ReliaStar") and its parent company, Defendant Voya America Equities, Inc., f/k/a ING America Equities, Inc. ("ING"), seeking a declaratory judgment that he has no obligation to repay Defendants for alleged excess compensation he received as a ReliaStar employee.[1] The court stayed the proceedings and ordered arbitration of the parties' dispute. The arbitrator's award favors Defendants, who now move for confirmation of the award. That motion, and Plaintiff's cross-motion to vacate the award, are before the court. For the reasons stated below, the court grants Defendants' motion [14], denies Plaintiff's motion [17], and confirms the arbitration award. The court denies without prejudice Defendants' request for sanctions against Plaintiff under Rule 11.

## BACKGROUND

Plaintiff was hired by ReliaStar as an "internal wholesaler," a position located in Minneapolis, Minnesota. (Compl. ¶ 4; Uniform Application for Securities Industry Registration or

---

[1] The court has jurisdiction over this case pursuant to 28 U.S.C. § 1332. Plaintiff is domiciled in, and is a citizen of, the state of Illinois. (Notice of Removal [1] ¶ 6; Compl. ¶ 1.) ReliaStar is a corporation incorporated in Minnesota, with its principal place of business in Minnesota. (Notice of Removal ¶ 7.) VAE is a corporation incorporated in the state of Colorado with its principal place of business in Colorado. (*Id.* ¶ 8.) The amount in controversy exceeds $75,000. (*Id.* ¶ 10.)

Transfer ("Form U-4") [9-1] at 1.) In April 2008, ReliaStar promoted Plaintiff to the position of Sales Vice President ("SVP") in Chicago, Illinois. (Compl. ¶ 7, Ex. A at 1.) As SVP, Plaintiff received a base salary of $24,000, a one-time signing bonus of $20,000, and reimbursement of his relocation expenses. (*Id.* ¶ 9.) During his first two years as SVP, Plaintiff also received a yearly salary of $111,000. (*Id.* ¶¶ 14, 26-27, Ex. A at 1.) Beginning in 2010, Plaintiff's annual compensation was determined by a document called the Policies and Sales Incentive Plan ("SIP" or "Plan"), which described certain policies applicable to sales employees of ReliaStar. (Compl. Ex. B at 3.)

Although the terms of the SIP varied from year to year, the Plan provided for the same general compensation structure: SVPs received a monthly pre-determined salary advance, called a "draw," and were also eligible to receive a commission on life insurance policy sales within their territories. (*Id.* ¶¶ 11-13.) If the SVP's sales resulted in a monthly commission that was greater than the draw amount he had received that month, the SVP would receive the excess amount as compensation. (*Id.* ¶ 23.) On the other hand, if the SVP's draw amount exceeded his monthly sales commission, the overpayment would accrue as a debt to the company. (Compl. Ex. B at 7.) The cover page of each SIP provided that the document "should not be construed as creating any contractual rights or obligations or restricting in any way [ReliaStar's] right to terminate [an individual's] employment." (*Id.* at 1.)

In 2010, Plaintiff's draw amounts exceeded his commissions by approximately $12,000. (Compl. ¶ 30.) ReliaStar informed Plaintiff that, because of this overpayment, Plaintiff would be eligible for monthly commissions in 2011 only if his actual sales resulted in monthly commissions that exceeded his monthly draws by more than $12,000. (*Id.* ¶¶ 31-32.) Plaintiff's commission earnings for 2011 did exceed the total of his monthly draw plus $12,000, and he received the excess amount as compensation. (*Id.* ¶¶ 33-34.) In 2012, Plaintiff's actual sales were $20,936,858, and he received 3.25% of that amount—$680,447.88—as a commission. (*Id.* ¶¶ 35-36.) Within the next year, however, $6,456,000 of Plaintiff's 2012 sales were

2

cancelled before the policies' first anniversary dates. (*Id.* ¶¶ 38-39.) ReliaStar's SIPs for 2012 and 2013 provided that if a policy is cancelled before its first anniversary date, the commission payment for the policy sale will be deducted, or "charged back," against the SVP's monthly draw amounts. (*Id.* ¶¶ 40-41.) Accordingly, the 2013 cancellations caused a charge-back against Plaintiff's monthly draws of approximately $210,000 (3.25% of $6,456,000). (*Id.* ¶ 45.) In September 2013, Plaintiff and his supervisor discussed the $210,000 charge-back on Plaintiff's commissions, and they agreed that Plaintiff's future draw amounts would be reduced until ReliaStar had recouped these funds. (*Id.* ¶¶ 63-64.) Plaintiff received reduced monthly draws from October 2013 to May 2014: from October 2013 through December 2013, Plaintiff's monthly draw was reduced from $8,800 to $6,500, and from January 2014 through May 2014, Plaintiff's monthly draw was reduced from $10,500 to $6,500. (*Id.* ¶¶ 66-67, 70-71.) On May 13, 2014, Plaintiff informed ReliaStar of his resignation, effective May 16, 2014. (*Id.* ¶ 75.) That same day, ReliaStar informed Plaintiff that he still owed the company $218,300 for the charge back on his commissions.[2] (*Id.* ¶ 79.) The 2014 SIP contained the following provision regarding ReliaStar's right to recover charge backs from terminated employees:

> If the SVP terminates employment either voluntarily or involuntarily with an overpayment-debt due and owing, the Company shall deduct such amounts from any amounts that are owed to the SVP by the Company, including, but not limited to the SVP's paycheck, PTO payout, bonus payment, or any expense reimbursements that are due to the SVP.

(Compl. Ex. C at 7.)

Plaintiff did not pay Defendants any money after his resignation. Instead, on July 31, 2014, Plaintiff filed a complaint against Defendants in the Circuit Court of Lake County, Illinois, seeking a declaratory judgment that the SIPs were not contracts, and thus did not impose any contractual obligation on Plaintiff to pay the $218,300 charge back on his commissions. (Notice

---

[2] The record does not explain why ReliaStar believed that Plaintiff owed a charge-back of $218,300, as opposed to $183,100 ($210,000 less the $26,900 in reductions from Plaintiff's monthly draws from October 2013 to May 2014). Plaintiff's complaint merely alleges that ReliaStar arrived at this amount after "deducting withholdings that [ReliaStar] would otherwise owe to" Plaintiff. (*Id.* ¶ 79.)

3

of Removal ¶ 1; Compl. ¶ 57.) Even if the SIPs were contracts, Plaintiff's complaint alleges, Defendants' contractual rights are limited to withholding compensation from Plaintiff at the time of his resignation. (Compl. ¶¶ 52-57, 78, 86-87.) After removing the case to federal court, Defendants moved to dismiss Plaintiff's complaint and compel arbitration based on a Form U-4 completed by Plaintiff as part of his employment with ReliaStar, pursuant to which Plaintiff agreed to arbitration by the Financial Industry Regulatory Authority ("FINRA") of any employment-related disputes between Plaintiff and Defendants. (Def. Mot. to Dismiss [7] at 1.) The court granted that motion on November 5, 2014, and stayed the federal court proceedings pending arbitration before FINRA. [13]

On July 8, 2015, the parties participated in an arbitration hearing before a panel of FINRA arbitrators (the "Arbitrators") in Chicago, Illinois. (Def. Mot. to Lift Stay and Confirm Arbitration Award [14] (hereinafter "Def Mot.") at 2.) Defendants alleged that the SIPs were contracts and that Plaintiff had breached these contracts by failing pay the $218,300 charge back to Defendants as required by the SIPs. (FINRA Award [14-1] at 1.) Defendants also asserted claims of quantum meruit and unjust enrichment. (*Id.*) On August 12, 2015, the Arbitrators issued their Award in favor of Defendants and ordered Plaintiff to pay ReliaStar damages in the amount of $218,318.39, plus 5% interest per year from the date of the Award until the award is paid in full. (*Id.* at 2.) The Arbitrators found that the SIPs were contracts between Plaintiff and ReliaStar, and that pursuant to these contracts, cancelled life insurance policies sold by Plaintiff would result in charge-backs against his previously paid commissions. (*Id.* at 3.) With respect to the unjust enrichment claim, the Arbitrators noted the following:

> [Plaintiff] argues that there was no unjust enrichment because there was a contract. Yet, as stated above, he also argues that there was no contract. In any event, it would indeed be unjust to allow [Plaintiff] to retain commissions in the circumstances discussed in this ruling.

(*Id.*) Following the issuance of this Award, Defendants moved to lift the stay, confirm the FINRA Award, and enter judgment against Plaintiff and in favor of Defendants in the amount of

4

$218,318.39, with 5% interest per year until paid in full. (Def. Mot. at 2.) In response, Plaintiff moved to vacate, or in the alternative, modify the Award. (Pl. Mot. to Vacate [20] at 1.) Defendants seek sanctions against Plaintiff under Rule 11 in the amount of reasonable expenses, including attorneys' fees, incurred by Defendants in connection with Plaintiff's motion. (Def. Mem. [24] at 14.)

## DISCUSSION

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, federal court review of arbitral awards is extremely limited, and perhaps "ought not to be called 'review' at all." *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994); *see Nat'l Wrecking Co. v. Local 731, Int'l Bhd. of Teamsters*, 990 F.2d 957, 960 (7th Cir. 1993) ("Arbitrators do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party."). When parties agree to arbitrate their disputes, they opt out of the court system, *Wise v. Wachovia Securities, LLC*, 450 F.3d 265, 269 (7th Cir. 2006), and "factual or legal error, no matter how gross, is insufficient to support overturning [the] award," *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 563 (7th Cir. 2008). The sole bases for vacating an arbitration award are identified in 9 U.S.C. § 10(a). *Affymax, Inc. v. Ortho–McNeil–Janssen Pharmaceuticals, Inc.*, 660 F.3d 281, 284 (7th Cir. 2011). That section allows a district court to vacate an arbitration award only if: (1) the award was "procured by corruption, fraud, or undue means"; (2) "there was evident partiality or corruption in the arbitrators"; (3) the arbitrators were guilty of misconduct "in refusing to hear evidence pertinent and material to the controversy" or "of any other misbehavior by which the rights of any party have been prejudiced"; or (4) the "arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

## I. Plaintiff's Motion to Vacate or Modify The Award

In his motion, Plaintiff contends that the court should vacate the Award under the fourth statutory ground: that the Arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made." (Pl. Mot. at 2 (citing 9 U.S.C. § 10(a)(4)).) Plaintiff argues this test is met in that the Arbitrators ignored the plain meaning of the SIPs, failed to allow Plaintiff to present alternative defenses, misconstrued Plaintiff's arguments, incorrectly calculated damages, and included interest as part of the Award without adequate consideration of the Arbitrators' FINRA-prescribed duties. (Pl. Mem. at 1-2.) None of these alleged failures can fairly be characterized as exceeding the Arbitrators' powers under 9 U.S.C. § 10(a)(4), however, and they are insufficient reasons to support vacating or modifying the Award.

During arbitration, Plaintiff asserted that the SIPs were not contracts and thus imposed no duty on him to repay Defendants for the $218,318.39 in overcompensation he had received. (Pl. Mem. at 3.) In support, Plaintiff emphasized that the SIPs provided that they "should not be construed as creating any contractual rights or obligations or restricting in any way your employer's right to terminate your employment." (*Id.*) Defendants argued that the language cited by Plaintiff did not mean that the SIPs were not contracts, but rather, was intended to be "a disclaimer to Illinois' traditional at-will employment." (*Id.*) The Arbitrators agreed with Defendants. They concluded that the SIPs "constituted contracts between ReliaStar and [Plaintiff]" and that the limiting language cited by Plaintiff "was intended to clarify the fact that these contracts did not constitute contracts of employment, as opposed to the at-will employment relationship that is usual under Illinois law." (Award at 3.) Plaintiff further argued that, even if the SIPs were contracts, the following 2014 SIP provision limited Defendants' recovery to the amounts due to Plaintiff at the time of his termination:

> If the SVP terminates employment either voluntarily or involuntarily with an overpayment-debt due and owing, the Company shall deduct such amounts from any amounts that are owed to the SVP by the Company, including, but not limited

6

> to the SVP's paycheck, PTO payout, bonus payment, or any expense reimbursements that are due to the SVP.

(Pl. Mem. at 4.) The Arbitrators rejected Plaintiff's interpretation, finding instead that "[t]his language . . . said that [the] payments [owed to Plaintiff by ReliaStar] would be cancelled," as opposed to "limiting [Plaintiff's payment] obligation only to those amounts." (Award at 3.)

In a dispute over contractual interpretation, in order for the court to find that the arbitrators exceeded their powers, the party seeking to vacate the award must show that the arbitrators "failed to interpret the contract at all." *Wise*, 450 F.3d at 269. In other words, the question for the court is "not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." *Affymax*, 660 F.3d at 286 (quoting *Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1194-95 (7th Cir. 1987)). Alternatively, a party can show that arbitrators exceeded their powers by engaging in a "manifest disregard of the law"; but such an argument requires the challenger to show the arbitrators deliberately disregarded what they knew to be the law in order to achieve a particular result. *Renard v. Ameriprise Fin. Servs., Inc.*, 778 F.3d 563, 567-68 (7th Cir. 2015) (citing *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994)); *see George Watts & Son, Inc. v. Tiffany and Co.,* 248 F.3d 577, 579-81 (7th Cir. 2001) (explaining that "manifest disregard of the law" exists only if the arbitrator directs the parties to violate the law).

Plaintiff Boldischar concedes that the Arbitrators interpreted the language of the SIPs. He nonetheless argues that the court should vacate the Award because the Arbitrators erred in their interpretation of these documents. (Pl. Mem. at 7, 9.) But an arbitral award cannot be vacated simply because there is another possible construction of the contract, even if that other construction is the correct one. *See Prostyakov v. Masco Corp.,* 513 F.3d 716, 723 (7th Cir. 2008) (the court will uphold an award unless the court infers a non-contractual basis for it because there is no other possible interpretive route). Nor can an arbitral award be vacated

7

because the arbitrators applied incorrect legal principles in their interpretation of the contract. *See, e.g.*, *Renard*, 778 F.3d at 567-68 ("[E]ven if these arbitrators erred in their application of Minnesota law . . . such an error falls short of a manifest disregard of the law.") As explained above, the arbitrators in this case interpreted the language of the SIPs and determined that they were contracts between Plaintiff and Defendants that imposed an obligation on Plaintiff to repay the charge-back on his previously paid commissions, regardless of the current status of Plaintiff's employment. Plaintiff believes that the Arbitrators erred in their interpretation by ignoring what Plaintiff deems plain language or by misinterpreting unambiguous contractual language. But that belief is an insufficient basis for overturning the Award. Similarly, the fact that the Arbitrators interpreted the SIPs defeats Plaintiff's claim that the Arbitrators exceeded their powers by manifestly disregarding the law or basing the Award on their "own sense of equity." (Pl. Mem. at 12 (citing *Archer-Daniels-Midland Co. v. Paillardon*, 944 F. Supp. 636, 644 (C.D. Ill. 2013))); *see Arch of Illinois, Div. of Apogee Coal Corp. v. Dist. 12, United Mine Workers of Am.*, 85 F.3d 1289, 1292 (7th Cir. 1996) (An arbitrator applies his "own sense of equity" when the arbitrator "fail[s] to interpret the agreement.").

Plaintiff further asserts that the Arbitrators exceeded their powers by failing to consider Plaintiff's arguments that were made "in the alternative." (Pl. Mem. at 11.) During the arbitration proceedings, Plaintiff responded to Defendants' breach of contract claim by arguing that the SIPs were not contracts. (*Id.*) Plaintiff responded to Defendants' unjust enrichment claim by arguing that the existence of a contract precluded quasi-contractual recovery. (*Id.*) In addressing Plaintiff's argument that Defendants were precluded from recovering under an unjust enrichment theory, the Arbitrators noted that Plaintiff "argues that there was no unjust enrichment because there was a contract. Yet, . . . he also argues that there was no contract." (*Id.*; Award at 3.) "In any event," the Arbitrators continued, "it would indeed be unjust to allow [Plaintiff] to retain commissions in the circumstances discussed in this ruling." (Award at 3.) This aspect of the Arbitrators' decision, Plaintiff asserts, "obscured [Plaintiff's] ability to present

8

alternative theories and defenses and deprived the Plaintiff of the ability to present an adequate defense." (Pl. Mem. at 11.) Again, the court disagrees. As the court reads the Award, the Arbitrators did not prevent Plaintiff from presenting an alternative defense; indeed, Plaintiff's main grievance is that he did in fact present alternative defenses, and the Arbitrators erred in rejecting them. This is not a basis for overturning an arbitration award. *See, e.g.*, *Eljer Mfg., Inc.*, 14 F.3d at 1255 (refusing to vacate arbitration award based on party's claim that the arbitrators erroneously rejected various legal defenses raised by the party).

Plaintiff next cites certain alleged factual and legal errors made by the Arbitrators and claims that these errors support vacating the Award. According to Plaintiff, the Arbitrators incorrectly found that Plaintiff was arguing that the SIPs were contracts that precluded Defendants from recovering under an unjust enrichment theory. In fact, Plaintiff insists, he was arguing that his employment offer letter was a contract that precluded Defendants from recovering under an unjust enrichment theory. (Pl. Mem. at 10-11.) Plaintiff also claims that the Arbitrators erred in awarding Defendants the pre-tax value of Plaintiff's compensation ($218,318.19). (*Id.* at 12.) Because damages in an unjust enrichment claim are the retained benefit, Plaintiff contends, the Award should have reflected the amount of overcompensation that Plaintiff had received after taxes. (*Id.*)

But Plaintiff's arguments fall outside the scope of the court's review. Plaintiff does not contend that, because of the allegedly incorrect damages award, he did not get a full and fair hearing or that there was any dishonesty on the part of the Arbitrators. Rather, he essentially asks the court to vacate the Award on the theory that the Arbitrators made an error of law because, under an unjust enrichment theory, a plaintiff may only obtain damages equal to the benefit actually retained. As the Seventh Circuit has repeatedly held, a claim of legal or factual mistake is not a sufficient basis to overturn an arbitrator's decision. *Halim*, 516 F.3d at 563.

For similar reasons, Plaintiff's claim that the Arbitrators misconstrued his arguments, without any allegation of deliberate misconduct on the part of the Arbitrators, is not a basis for

9

overturning the Award. In any event, Plaintiff's own statements appear to defeat this claim. Plaintiff acknowledges that during arbitration he argued that, if the Arbitrators found the SIPs to be contracts, "the Plaintiff did not breach the contractual terms" because the SIPs limited Defendants' recovery to amounts owed to Plaintiff at the time of his resignation. (Pl. Mem. at 4.)

Lastly, Plaintiff asserts that the Arbitrators exceeded their powers when they ordered Plaintiff to pay interest on the $218,318.19 at 5% per year from the date of the Award until Plaintiff pays the award in full. (Pl. Mem. at 12.) According to Plaintiff, FINRA guidelines require arbitrators to review the following issues when deciding whether to include interest as part of an award: statutory or contractual basis that allows interest to be awarded, amounts of or rate of interest, date interest begins, and date interest ends. (*Id.*) Although the Arbitrators considered the rate of interest (5%), the date that the interest begins (date of the Award), and the date that the interest ends (Plaintiff pays award in full), Plaintiff asserts that the Arbitrators failed to consider any statutory or contractual basis for including interest as part of the award in this case. (*Id.*) Never mind that an award of interest is standard for "any money judgment in a civil case recovered in a district court," 28 U.S.C. § 1961, the fact that the Arbitrators did not mention a statutory or contractual basis for including interest as part of the Award, does not mean that the Arbitrators failed to review this issue in reaching their decision. "An arbitrator is simply not required to state the reasons for his decision." *Elijer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1255 (7th Cir. 1994). It is not clear from the face of the Award that the Arbitrators failed to consider these issues, and the court declines to assume that the Arbitrators failed to do so. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, (1960) ("[W]e see no reason to assume that this arbitrator has . . . not stayed within the areas marked out for his consideration" simply because the arbitrator did not explain the reasons for his decision.)

In sum, the Arbitrators resolved the parties' dispute on the basis of the laws and arguments presented to them, and Plaintiff has failed to demonstrate that the Arbitrators

10

exceeded their powers under 9 U.S.C. § 10(a)(4).  Plaintiff's arguments in support of his motion to vacate appear to be nothing more than a "thinly veiled attemp[t] to obtain appellate review of [the Arbitrators'] decision." *Flexible Mfg. Sys. Pty. Ltd. v. Super Prods. Corp.,* 86 F.3d 96, 100 (7th Cir. 1996).  A disappointed party to arbitration is not allowed to "bring his dispute into court by the back door," however.  *Baravati,* 28 F.3d at 706.  Accordingly, Plaintiff's motion to vacate is denied.

Alternatively, Plaintiff seeks to modify the Award.  Under the FAA, a court is permitted to modify or correct an award "where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a).  The modification provision of the FAA "is present to correct patent mathematical errors or misidentifications," and is not "a vehicle through which a dissatisfied party may make an end run around the limited judicial review of arbitral decisions." *Mical v. Glick*, No. 13 C 6508, 2014 WL 322093, at *3 (N.D. Ill. Jan. 28, 2014), *aff'd*, 581 F. App'x 568 (7th Cir. 2014).  In this case, Plaintiff's requested modification amounts to an attempt to relitigate the arbitration; Plaintiff does not cite any mathematical errors on the part of the Arbitrators, but claims that the Arbitrators' decision was erroneous for the various reasons discussed above.  Plaintiff's motion to modify the Award is denied.

## II.  Defendant's Motion to Confirm of the Award and for Sanctions

Defendants seek confirmation of the Award.  Within one year of the entry of an award, a party may seek to confirm it in the court, and the court must do so unless the award has been vacated or modified under 9 U.S.C. §§ 10 or 11.  9 U.S.C. § 9.  "[I]f the district judge is satisfied that the arbitrators resolved the entire dispute and can figure out what that resolution is, [she] must confirm the award." *IDS Life Ins. Co. v. Royal Alliance Assocs.*, 266 F.3d 645, 650-51 (7th Cir. 2001).  Here, Defendants have sought confirmation of the Award within one year of its entry on August 12, 2015.  The Award presents the court with no challenges in terms of comprehending it, and thus the Award is confirmed.

Defendants also seek sanctions under Rule 11, asserting that Plaintiff's motion to vacate is frivolous and relies on incorrect legal standards. (Def. Mem. at 13.) But Defendants offer no indication that they have complied with the safe-harbor requirements of Rule 11. The procedural requirements of the rule are straightforward: "(1) that a request for sanctions be made in a separate motion rather than as an appendage to another motion or responsive memorandum, and (2) that the party to be sanctioned be given a twenty-one day safe harbor in which to withdraw or correct the allegedly offending filing." *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1058 (7th Cir. 1998) (citing FED. R. CIV. P. 11(c)(1)(A)). As the record lacks any evidence that Plaintiff was given the required safe-harbor period, Defendant's request for sanctions is denied without prejudice. *Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co.*, 649 F.3d 539, 553 (7th Cir. 2011) ("Postjudgment motions for sanctions are permissible so long as the moving party substantially complies with Rule 11's safe-harbor requirement . . . .").

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to lift the court's stay and confirm the Award [14] is granted, and Plaintiff's motion to vacate or modify the Award [17] is denied. Defendant's request for sanctions is denied without prejudice.

ENTER:

Dated: July 26, 2016

_____
REBECCA R. PALLMEYER
United States District Judge